[Cite as *State ex rel. Strahin v. Indus. Comm.*, 2016-Ohio-1323.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio ex rel. Frank Strahin, | : | |
| Relator, | : | |
| v. | : | No. 15AP-490 |
| Industrial Commission of Ohio and New Philadelphia ODOT Mailstop 1520, | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on March 29, 2016

*Schiavoni, Schiavoni, Bush & Muldowney*, and *Shawn R. Muldowney,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Buckingham, Doolittle & Burroughs, LLP, Marietta M. Pavlidis*, and *Denise A. Gary,* for respondent New Philadelphia ODOT Mail Stop 1520.

IN MANDAMUS
ON OBJECTIONS TO THE MAGISTRATE'S DECISION

BROWN, J.

{¶ 1} Relator, Frank Strahin ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that denied his application for temporary total disability ("TTD") compensation on grounds that he had voluntarily abandoned his

employment when he retired for reasons unrelated to his allowed conditions, and to enter an order granting said compensation.

{¶ 2}   This court referred the matter to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, and recommended that this court deny claimant's request for a writ of mandamus. Claimant has filed two objections to the magistrate's decision.

{¶ 3}   Claimant argues in his first objection that the magistrate erred when she found the commission had some evidence to support its conclusion that claimant voluntarily retired on November 1, 2012. Claimant contends that all of the medical records submitted by Dr. David DeSantis, D.O., supported the fact that claimant's retirement was solely related to his inability to continue to work as a direct result of the allowed conditions. Claimant points out that Dr. DeSantis stated in his October 4, 2012 office note three weeks prior to claimant's retirement that the pain in his knee had increased to a point where he was having trouble walking. Furthermore, Dr. DeSantis submitted two December 2014 narrative reports expressing the opinion that claimant's retirement was directly related to his industrial injury. Dr. DeSantis indicated that if claimant had not retired on November 1, 2012, the doctor would have been forced to take claimant off work on TTD at that time. Claimant also asserts that his own affidavits indicate that his retirement was due exclusively to his inability to work as a result of his allowed conditions in the claim, and claimant testified at the hearing that his retirement was the direct result of his inability to work.

{¶ 4}   We disagree with claimant that there is nothing in the transcript or Dr. DeSantis' medical records to support the commission's finding that he voluntarily abandoned his employment due to reasons unrelated to his industrial injury. The district hearing officer ("DHO"), the staff hearing officer ("SHO"), and the magistrate all issued comprehensive determinations that sufficiently addressed claimant's argument and cited evidence from the record that suggested claimant retired for reasons other than his injury. The following is a summary of the pertinent findings made by the DHO, SHO, and magistrate: claimant returned to work from his injury in August 2009 without restrictions and continued to work full-time without restrictions until his retirement; claimant did not

cite his injury or health as the reason for leaving his employment in his retirement documents, instead merely indicating "retirement"; Dr. DeSantis noted a flare-up in claimant's knee three weeks before retirement but did not impose any restrictions; claimant testified that he began to research and contemplate retirement in June 2012, which was before his October 2012 exacerbation; claimant testified that in June 2012, he weighed retiring in November 2012 in order to take advantage of the current Public Employees Retirement System ("PERS") rules; claimant began his retirement paperwork before his October 2012 exacerbation; and there was no contemporaneous medical evidence from the time of his retirement to demonstrate that the retirement was due to his injury.

{¶ 5}   Although claimant may disagree with the commission's decision to find claimant's and Dr. DeSantis' post-hoc reasons for claimant's retirement unpersuasive, the commission is the sole evaluator of credibility and was free to reject their claims.  *See State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18 (1987) (the commission is the sole evaluator of credibility and is free to reject evidence it finds not credible). Furthermore, the commission is well within its discretion to characterize retirement as voluntary based on a lack of contemporaneous medical evidence of disability, although it is not required to do so. *State ex rel. Cinergy Corp./Duke Energy v. Heber*, 130 Ohio St.3d 194, 2011-Ohio-5027, ¶ 7.  Therefore, we find the above evidence cited by the DHO, SHO, and magistrate provides "some evidence" to support the commission's determination. We overrule claimant's first objection.

{¶ 6}   Claimant argues in his second objection that the magistrate erred when she found the commission did not misconstrue claimant's testimony. Claimant contests the SHO's following finding:

> The Injured Worker testified at today's hearing, similarly to his testimony as reflected in the prior District Hearing Officer level decision. The Injured Worker testified that he began to contemplate retiring from employment at approximately June 2012. The Injured Worker stated that he began to contemplate retirement at that time due to publicity surrounding the Public Employee's Retirement System, (hereafter PERS) and proposed legislative changes to this system.

To the contrary, claimant contends, he consistently testified at the SHO hearing that his retirement was exclusively due to his allowed knee condition and inability to work.

{¶ 7}   We agree with claimant that in his direct examination testimony before the SHO, claimant stressed that his injury was the basis for his retirement. However, on cross-examination at the hearing before the SHO, claimant admitted that he "checked on" retiring four months prior to his retirement at the end of October 2012 (in approximately June 2012) by meeting with a PERS representative. Although at the hearing before the SHO he said that the pending legislative changes to PERS did "[n]ot really" have much of an effect on his decision to retire, he eventually admitted on cross-examination that he did not know what effect the changes would have until he spoke to a PERS representative in June 2012. When pressed on the issue during cross-examination, he eventually conceded that he went to the PERS representative in June 2012 to get "some answers" about the legislative changes to see when it would be most financially advantageous to retire. Furthermore, claimant was asked the following question at the hearing before the SHO:

> Q. Okay. Back at this district hearing, when you went to that first hearing, did you tell the Hearing Officer at that time that you were concerned about these legislative changes and that is why you wanted to look into retirement? Did you tell the Hearing Officer that?
>
> A. Yes. We were all -- everybody in the whole state was probably looking at that.

{¶ 8}   While we agree that at the SHO hearing claimant testified that he began to contemplate retirement due to his knee injury, given claimant's above testimony with regard to the role the pending legislative changes to PERS played in his decision, we cannot say the SHO's finding mischaracterized claimant's testimony. Claimant admitted that the pending legislative changes were, in fact, one of the reasons he began contemplating retirement four months prior to October 2012. The SHO's finding was more likely a result of the SHO's apparent disbelief of claimant's testimony that it was his injury that prompted him to investigate retirement in June 2012 than a mischaracterization of his testimony. It was within the SHO's discretion to find claimant's testimony not credible. *See State ex rel. Collins v. Indus. Comm.*, 10th Dist. No. 04AP-31, 2004-Ohio-7201, ¶ 9, citing *State ex rel. Baker v. Indus. Comm.*, 97 Ohio St.3d 267,

2002-Ohio-6341, ¶ 6 (determination of the credibility of evidence belongs to the commission alone). Therefore, we overrule claimant's second objection.

{¶ 9}   After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of claimant's objections, we overrule the objections and adopt the magistrate's findings of fact and conclusions of law. Claimant's writ of mandamus is denied.

*Objections overruled;*
*writ of mandamus denied.*

TYACK and KLATT, JJ., concur.

_____

[Cite as *State ex rel. Strahin v. Indus. Comm.*, 2016-Ohio-1323.]

# APPENDIX

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

State of Ohio ex rel. Frank Strahin, :

        Relator, :

v. : No. 15AP-490

Industrial Commission of Ohio : (REGULAR CALENDAR)
and New Philadelphia ODOT
Mailstop 1520, :

        Respondents. :

:

---

## M A G I S T R A T E ' S   D E C I S I O N

### Rendered on December 14, 2015

---

*Schiavoni, Schiavoni, Bush & Muldowney* and *Shawn R. Muldowney,* for relator.

*Michael DeWine*, Attorney General, and *Kevin J. Reis,* for respondent Industrial Commission of Ohio.

*Buckingham, Doolittle & Burroughs, LLP, Marietta M. Pavlidis* and *Denise A. Gary,* for respondent New Philadelphia ODOT Mail Stop 1520.

---

### IN MANDAMUS

{¶ 10} Relator, Frank Strahin, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denied relator's application for temporary total disability ("TTD") compensation on grounds that he had voluntarily abandoned his

employment when he retired for reasons unrelated to his allowed conditions, and ordering the commission to find that he is entitled to that compensation.

Findings of Fact:

{¶ 11} 1. Relator sustained a work-related injury on October 23, 2008, and his workers' compensation claim was originally allowed for:

> SPRAIN LEFT HIP AND THIGH; SPRAIN LEFT KNEE AND
> LEG; TEAR LEFT MEDIAL MENISCUS; LOCALIZED
> PRIMARY OSTEOARTHRITIS LEFT LEG.

{¶ 12} 2. Relator was released to return to work with no restrictions as of August 11, 2009.

{¶ 13} 3. Relator continued to work full-duty with no restrictions until 2012. According to his testimony, relator began looking into retirement in June 2012. Relator also testified that, as of October 2012, when he completed the paperwork for retirement, he was still working without any restrictions.

{¶ 14} 4. On October 5, 2012, relator completed a resignation/separation form indicating that he was leaving his employment due to "Retirement." Relator had the option to indicate that the reason he was leaving was due to "Health" or he could have listed any other reason; however, he did not.

{¶ 15} 5. Relator elected to take a retirement after 25 years of service and after his 60th birthday. His benefit was effective November 1, 2012. There is evidence in the record that, on October 4, 2012, relator visited his treating physician because he had increased pain in his knee and was having difficulty walking. According to the record of that date, the treating physician stated:

> The pain increased the last several days to a point where he
> is having trouble walking. * * * I do feel this patient is
> suffering from a flare-up of his meniscus tear brought about
> by increased standing and walking. He is set to retire in 4
> weeks and he will be able to decrease his activities more at
> that time.

{¶ 16} Although his doctor provided therapy for his knee, relator was not placed on any restrictions at this time.

{¶ 17} 6. On February 20, 2014, relator's left knee gave out and he fell. Ultimately, his workers' compensation claim was additionally allowed for the following conditions:

DISPLACED FRACTURE RIGHT DISTAL FIBULA; AVULSION FRACTURE ANTEROLATERAL ASPECT DISTAL RIGHT TIBIA; SPRAIN RIGHT ANKLE.

{¶ 18} 7. Based on these newly allowed conditions, relator filed an application seeking TTD compensation from February 20 through May 31, 2014 and continuing.

{¶ 19} 8. Relator's request for TTD compensation was heard before a district hearing officer ("DHO") on July 28, 2014 and was denied. After recounting the facts heretofor listed in the findings of fact, the DHO determined that relator made his decision to accept an age and service term retirement more than one month before he experienced an exacerbation of his condition, and that the changes in the pension plan were important to relator's decision. The DHO explained:

> According to his testimony at the hearing, Mr. Strahin began to contemplate retirement in June of 2012 as a consequence of the proposed legislative changes to the public employee retirement service, which would have the effect of decreasing the benefits paid out, both in terms of compensation and the availability of health care benefits for retirees in the future. He conducted research on his options over the next three months and decided that an age and service term type of retirement was more lucrative than a disability retirement related to his left knee conditions. He also testified that his research led him to conclude that the health care options available with the age and service term retirement were more beneficial for his wife who also needed to be covered during his retirement. As a consequence, he began the process of filing for an age and service term type of retirement in September of 2012. His application was approved and he retired from his employment effective 11/01/2012.

> Mr. Strahin continued with treatments under this claim even after his retirement. In 2014, he experienced an episode of his left leg giving out, causing him to fall at home and injure his right foot. The Bureau of Workers' Compensation granted his request to add conditions related to this flow-through injury to his claim by issuing a decision on 04/02/2014. The current request for payment of Temporary Total Disability Compensation benefits relates to the date of this incident.

> Mr. Strahin maintains that, given his continued problems with his left knee, the reason at the core of his decision to retire in 2012 was his disability. In support of this conclusion he points to the fact that he had planned to retire after 30

years of service, allowing him to draw a larger pension. He further points to the continued treatments under this claim as evidence that the true motivation for his retirement was the disability caused by his left knee.

The Employer of Record and the Bureau of Workers' Compensation, in response, rely upon the fact that his retirement was not disability-related in character. Further, they rely upon Mr. Strahin's testimony at the hearing that financial considerations were at the core of his decision, from the beginning of his process of contemplating retirement, due to proposed legislative changes, to the final decision not to apply for disability retirement, because he would be receiving a smaller pay-out and the consideration for his wife's future medical insurance.

In this case, a review of the medical evidence on file reveals no opinion from a health care provider that Mr. Strahin should retire from employment as a consequence of the disability caused by the left knee conditions recognized in this claim in 2012, the time he began to contemplate retirement. In fact, based upon the medical evidence on file, Mr. Strahin had been working for nearly 3 years, without restrictions, when he first considered retirement in June of 2012, as a result of proposed legislative changes which could adversely affect his pension income and retiree health benefits. While there is a reference to a period of disability from work, in the 10/25/2012 office note from the treating chiropractor, D. DeSantis, DC, the disability slip related to this absence from work has not been submitted to the file. Thus, it is impossible to determine if the disability was independently attributed to the conditions recognized in this claim at that time. In any case, Mr. Strahin had made his decision to accept an age and service term retirement more than one month prior to 10/25/2012 and made no attempt to change the nature of his retirement in the week he worked subsequent to the 10/25/2012 office visit. Thus, he had clearly made up his mind as to the form of the retirement he wished to pursue in September of 2012, and any subsequent disability related to his left knee was not sufficient to convince him to change his mind. Thus, in applying the "objective facts" standard urged by *Diversitech,* the medical evidence does not support a conclusion that the left knee conditions recognized in this claim, *at the time Mr. Strahin made his final decision with regard to the form of retirement for which he would apply in September of 2012,* mandated that he accept a disability retirement. In fact, at

that time, he had been working without restrictions for over 3 years.

In the context of his final choice, even Mr. Strahin does not dispute that he filed for and accepted an age and service term related retirement in 2012, based upon the fact that he determined it was in his financial interest. Only now, when his financial interests would be more aligned with construing his retirement as primarily related to disability, does he ask for a construction of his age and service term related retirement as something else. Thus, in light of Mr. Strahin's careful analysis of his retirement options in the five months prior to his retirement, the "objective facts" standard related in *Diversitech* would not support a construction of Mr. Strahin's retirement from age and service term related to disability. This is specially the case given the fact that Mr. Strahin has benefit reaping the benefits of his decision for 14 months, by accepting the greater pension compensation afforded by his choice of an age and service term related retirement.

Based upon the foregoing analysis, Mr. Strahin chose to exit the workforce in 2012 for reasons unrelated to the conditions recognized in this claim. Accordingly, he has sustained no injury-related loss of earnings which would need to be replaced by payments of Temporary Total Disability Compensation benefits. Thus, the request for payment of Temporary Total Disability Compensation benefits for the period from 02/20/2014 through 07/28/2014 is denied.

This decision is based upon the testimony presented at the hearing by Mr. Strahin, as set forth above; the 08/12/2009 and 04/02/2014 decisions of the Administrator; and, a review of the progress notes from the treating chiropractor. All evidence on file with regard to this mater was reviewed and considered.

(Emphasis sic.)

{¶ 20} 9. Relator's appeal was heard before a staff hearing officer ("SHO") on December 4, 2014. The SHO specifically noted that there was an absence of any medical evidence of work restrictions contained within the record spanning the period when relator returned to work on August 11, 2009 through the effective date of his retirement November 1, 2012. The SHO noted further that relator had testified before the DHO that

he began contemplating retirement in June 2012. At the hearing before the SHO, relator asserted that his ongoing left knee problems were the basis for his decision to retire in 2012 and that, had it not been for his injury, he would not have retired before reaching 65 years of age. Ultimately, the SHO weighed the evidence and applied the law thereto and concluded that relator had voluntarily abandoned his employment when he resigned from his employer, stating:

> In reviewing the Injured Worker's retirement at hand, the Staff Hearing Officer finds that the medical evidence contained within the record fails to reflect any medical opinion from a health care provider recommending that the Injured Worker retire from employment or leave the workforce due to the injury and/or allowed conditions in this claim in 2012, specifically from June 2012 through 11/01/2012, the effective date of the Injured Worker's retirement.
>
> Notably, the Staff Hearing Officer finds per a review of the medical evidence contained within the record that the Injured Worker had been working in his former position of employment, *without any physical restrictions, for nearly three years when he first began to consider his retirement options in June 2012.* The Staff Hearing Officer acknowledges that there is a reference to a period of disability from work in the 10/25/2012 office visit record from David P. DeSantis, D.C., however, no *contemporaneous* disability slip or other such document has been made a part of the record that specifies what condition or conditions this disability was predicated upon. As such, it cannot be ascertained if the disability alleged was independently attributable to the conditions recognized in this claim at that time.
>
> Notwithstanding the 10/25/2012 office visit record, the Injured Worker made his decision to accept an age and service type retirement approximately one month before that office visit and made no attempt to change the nature of his retirement in the week he worked subsequent to that office visit. It is concluded therefore, that the Injured Worker had clearly made up his mind as to the form of the retirement he wanted to elect and any subsequent disability encompassed by the 10/25/2012 office visit record, whether related to the Injured Worker's left knee or not, was insufficient to convince the Injured Worker to change his original election to accept an age and service type pension from PERS.

Based upon an "objective facts" standard as per the Diversitech case, the Staff Hearing Officer concludes that the contemporaneous medical evidence on record at the time of the Injured Worker's election to take an age and service type retirement through PERS, does not support a conclusion that the left knee conditions recognized in this claim, mandated that the Injured Worker elect a disability retirement type pension. Again, at the time of the Injured Worker's election, he had been working without any physical restrictions for over three years. The Staff Hearing Officer finds this fact very significant.

As found by the District Hearing Officer below, the Staff Hearing Officer finds that since the Injured Worker's original election to accept an age and service type retirement from PERS, the Injured Worker did not attempt to change this election to be viewed as a disability based retirement until now when, after surgery, the Injured Worker is unable to work, purportedly on a temporarily and totally disabling basis. The Staff Hearing Officer finds that the Injured Worker accepted his age and service type benefits for 14 months based upon his original election.

It is the finding of the Staff Hearing Officer that when the Injured Worker elected to leave the workforce effective 11/01/2012 by accepting an age and service type pension from PERS, said election was accepted for reasons unrelated to allowed conditions in this claim. As such, it is found that the Injured Worker's said retirement constitutes a voluntary removal from the workforce, i.e. a voluntary abandonment of the workforce, which precludes the payment of temporary total disability compensation benefits thereafter. It is noted the Injured Worker testified at today's hearing that he has not worked for anyone in any capacity, including self-employment, since his retirement date of 11/01/2012.

For the reasons set forth above, it is the decision of the Staff Hearing Officer to deny authorization for the payment of temporary total disability compensation benefits for the period from 02/02/2014 through 12/04/2014, the date of this hearing, as the Injured Worker is found to have voluntarily retired by accepting an age and service type pension from PERS, effective 11/01/2012 thereby precluding his eligibility for temporary total disability compensation benefits. By accepting said voluntary retirement, it is the finding of the Staff Hearing Officer that the Injured Worker had no injury-related loss of earnings to be replaced by

> payment of temporary total disability compensation benefits for the period addressed above.
>
> Accordingly, the Injured Worker's request for payment of temporary total disability compensation benefits is denied as specified and ordered above.
>
> In rendering this decision, the Staff Hearing Officer has relied upon the Injured Worker's testimony as reflected above as well as in the prior District Hearing Officer level decision; the 08/12/2009 and 04/02/2014 decisions of the bureau of Workers' Compensation; a review of the medical opinions/office visit records from Dr. DeSantis contemporaneous to the period of time in which the Injured Worker was contemplating, researching and actually electing his retirement plan.

(Emphasis sic.)

{¶ 21} 10. Relator's appeal was refused by order of the commission mailed January 13, 2015.

{¶ 22} 11. Relator filed a request for reconsideration again arguing that the facts clearly establish that his retirement was causally related to the allowed industrial injury; however, the commission disagreed, and denied his request for reconsideration in an order mailed January 30, 2015.

{¶ 23} 12. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 24} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 25} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 26} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's

treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. *See* R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 27} TTD compensation is intended to compensate injured workers for their loss of wages while they are recuperating from a work-related injury. *See State ex rel. Ashcraft v. Indus. Comm.*, 34 Ohio St.3d 42 (1987) and *State ex rel. McCoy v. Dedicated Transport, Inc.*, 97 Ohio St.3d 25, 2002-Ohio-5305. If an injured worker leaves the workforce for reasons unrelated to his or her industrial injury, he or she is not legally entitled to receive payments of TTD compensation because there is no corresponding injury-related loss of earnings to replace. *State ex rel. Pierron v. Indus. Comm.*, 120 Ohio St.3d 40, 2008-Ohio-5245. The determination of whether an injured worker voluntarily abandoned his or her former position of employment is primarily one of intent which may be inferred from objective facts, such as words spoken and acts performed. *See State ex rel. Diversitech Gen. Plastic Film Div. v. Indus. Comm.*, 45 Ohio St.3d 381 (1989). The presence of such intent is a factual question left to the discretion of the commission. *Id.*

{¶ 28} In determining that relator's retirement was voluntary, the SHO relied on the following: relator's testimony at the hearing before the DHO[1], prior Ohio Bureau of Workers' Compensation ("BWC") findings and commission determinations, and a review of the medical evidence contemporaneous to the period of time in which relator was contemplating, researching, and actually electing his retirement plan. The SHO noted that, at the hearing before the DHO, relator testified that he began contemplating retirement in June 2012. At that time, he was working with his employer of record full-time and without any restrictions. According to the DHO order, the upcoming changes in the retirement plans under the Public Employees Retirement System motivated relator to consider retirement. The DHO and SHO both found it significant that relator started

---

[1] The transcript in the stipulation of evidence pages 69-119 is mistakenly identified as occurring before a DHO. However, the transcript is actually from the hearing before the SHO, C. Hudzik, and not from the hearing before the DHO, B. Alex Khavri. As such, to the extent counsel argued at oral argument that the SHO misconstrued relator's testimony before the DHO and pointed to portions of the transcript to prove the point, it is clear that the transcript is mistakenly labeled as occurring before a DHO. December 4,

paperwork before the October 2012 exacerbation. Further, there are no medical records in the stipulation of evidence which would indicate that relator was having any problems with his knee or even receiving ongoing supportive care for his knee in June 2012. The BWC record referenced indicates that relator went back to full-duty work on August 11, 2009 and there was no specific ongoing treatment plan in place. The BWC order referenced is the order granting relator's motion that his claim be additionally allowed for certain conditions to his right leg which occurred after relator fell.

{¶ 29} Relator has submitted affidavits asserting that the worsening of his knee condition in October 2012 was the primary reason he chose to retire. However, in June 2012, when relator began contemplating his retirement options, there is no medical evidence in the record nor has relator testified that he was experiencing an exacerbation of problems with his left knee. As the SHO noted, relator was performing full-duty work without any restrictions. Where there is conflicting evidence, the commission, as the trier of fact, has the discretion to weigh the evidence and make a determination. Inasmuch as there is some evidence in the record to support the commission's determination that relator's retirement was not related to the allowed conditions in his claim, relator cannot demonstrate an abuse of discretion.

{¶ 30} Based on the forgoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it determined that he had voluntarily abandoned his employment and that abandonment barred his receipt of TTD compensation, and this court should deny relator's request for a writ of mandamus.

/S/ MAGISTRATE
STEPHANIE BISCA

---

2014 is the date of the hearing before the SHO and not the DHO and Hudzik is the hearing officer and not Khavari. Without a copy of the DHO transcript, counsel's argument cannot be corroborated.

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).